IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

FIREMAN'S FUND INSURANCE COMPANY,      Civ. No. 06-6277-AA
a California corporation; and
ASSOCIATED INDEMNITY CORPORATION,       OPINION AND ORDER
a California corporation,

      Plaintiffs,

   v.

THOMAS CREEK LUMBER AND LOG CO.,
an Oregon corporation; BRENT C.
WALKER; and TONI M. WALKER,

      Defendants.

_____

Jan D. Sokol
STEWART SOKOL & GRAY LLC
2300 SW First Avenue, Suite 200
Portland, OR 97201-5047
    Attorney for plaintiffs

Joseph A. Yazbeck
YAZBECK, CLORAN & HANSON, LCC
1300 S.W. Fifth Avenue, Suite 2750
Portland, OR 97201-5617
    Attorney for defendants

1 - OPINION AND ORDER

AIKEN, Judge:

Plaintiffs Fireman's Fund Insurance Company (FFIC) and Associated Indemnity Corporation (AIC) filed suit alleging breach a written Indemnity Agreement between them and defendants. Plaintiffs also brought suit for common law indemnity and reimbursement.

Plaintiffs move for summary judgement against defendants, arguing that no genuine issue of material fact exists as to whether defendants breached the terms of Indemnity Agreement and that plaintiffs are entitled to summary judgment as a matter of law. In turn, defendants seek summary judgment on grounds that the parties entered into an oral agreement that settled all outstanding accounts. Plaintiffs' motion for summary judgment is granted, and defendants' motion for summary judgment is denied.

<u>BACKGROUND</u>

Defendant Thomas Creek Lumber and Log Company (Thomas Creek) is an Oregon-based lumber company. Defendant Brent C. Walker is the President of Thomas Creek. Plaintiffs FFIC and AIC are sureties.

Plaintiffs claim, and defendants concede, that plaintiffs posted various surety bonds on behalf of the defendants to secure their performance with respect to several timber sales, including: 1) the Thin Wolf Bond (No. SCR111 3306 9994), a performance bond posted by FFIC to the Oregon State Forestry Department (OSFD), as

2 - OPINION AND ORDER

obligee, for the Thin Wolf Timber Sale; 2) the Oregon Blanket Bond
(No. SCR111 1936 1589), a blanket payment bond posted by AIC to the
OSFD, as obligee; 3) the Thamnophis Bond (No. SCR111 1936 1886), a
performance bond posted by AIC to the Bureau of Land Management
(BLM), as obligee, for the Thamnophis Timber Sale; and 4) the BLM
Blanket Bond (No. SCR111 1936 1957), a blanket payment bond posted
by AIC to the BLM.

In partial consideration for posting the Bonds, defendants
entered into a General Indemnity Agreement (Indemnity Agreement) in
favor of plaintiffs, under which defendants agreed to indemnify and
hold plaintiffs harmless against any loss or expenses  - including
attorney fees and costs - incurred by plaintiffs by reason of the
posting of the Bonds.

Plaintiffs aver that defendants defaulted on the Thin Wolf and
Thamnophis Bonds by failing to pay the obligees and reimburse
plaintiffs for all costs and expenses incurred in connection with
the Bonds.  Defendants do not dispute that they failed to pay the
obligees or that claims were presented against the Bonds that
plaintiffs were required to pay.

In February 2001, plaintiffs and Thomas Creek entered into a
Settlement Agreement and Mutual Release with the OSFD with respect
to the Thin Wolf Bond.  Declaration of Brent C. Walker (Walker
Decl.), Ex. 1.  Pursuant to the Settlement Agreement, on November
21, 2000 plaintiffs and Thomas Creek paid $236,349.00 to the State

3 - OPINION AND ORDER

of Oregon.   Plaintiffs contend and defendants do not dispute that the amount of $236,349.00 was paid solely by plaintiffs as surety, although  Thomas  Creek  made  an  interest  payment  of  $700.00  on November 21, 2000 under the Agreement.

On or about May 1, 2001 counsel for plaintiffs wrote a letter demanding that Thomas Creek reimburse plaintiffs in the amounts of $236,349.00 for expenses and claims payments incurred in connection with the Thin Wolf Bond and $140,700.00 for expenses and claims payments incurred in connection with the Thamnophis Bond.  Walker Decl., Ex. 2.

In  August  2001,  Thomas  Creek  entered  into  a  written Modification to Agreement with plaintiffs and the BLM that resolved plaintiff's  claim  for  reimbursement  on  the  Thamnophis  bond. Pursuant to the Agreement, the BLM agreed to pay $800,706.00 to Thomas Creek for an outstanding claim, and Thomas Creek agreed to pay $371,662.32 to the BLM for outstanding debts on timber sales. Of the $371,662.32 from Thomas Creek, the BLM agreed to transfer $140,700.00 to plaintiffs to satisfy the claim on the Thamnophis Bond.  See Walker Decl., Ex. 3.

The parties do not dispute that the August 2001 Modification to Agreement resolved plaintiffs' claims for reimbursement of $140,700.00 in connection with the Thamnophis bond.  However, plaintiffs claim that defendants have failed to indemnify them for the $236,349.00 paid to the State of Oregon in connection with the

Thin Wolf Bond, plus $1,069.00 in costs, expenses and attorneys'
fees.  Defendants maintain that the parties settled the Thin Wolf
Bond through an oral settlement agreement.

### STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no genuine
issue as to any material fact and that the moving party is entitled
to a judgment as a matter of law." Fed. R. Civ. P. 56(c)).  The
materiality of a fact is determined by the substantive law on the
issue. T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809
F.2d 626, 630 (9th Cir. 1987).  The authenticity of a dispute is
determined by whether the evidence is such that a reasonable jury
could return a verdict for the nonmoving party. Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of
a genuine issue of material fact. Celotex Corp. v. Catrett, 477
U.S. 317, 323 (1986).  If the moving party shows the absence of a
genuine issue of material fact, the nonmoving party must go beyond
the pleadings and identify facts which show a genuine issue for
trial. Id. at 324.

Special rules of construction apply to evaluating summary
judgment motions: (1) all reasonable doubts as to the existence of
genuine issues of material fact should be resolved against the

5 - OPINION AND ORDER

moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. T.W. Elec., 809 F.2d at 630.

## DISCUSSION

Plaintiffs and the defendants both move for summary judgment on the issue of liability under the Indemnity Agreement. Plaintiffs claim that they are entitled to summary judgment, because they incurred expenses associated with posting the Thin Wolf Bond, thus obligating defendants to indemnify and reimburse plaintiffs under the Indemnity Agreement. Defendants argue that they are entitled to summary judgment, because they reached an oral agreement with plaintiffs' in-house counsel which settled the amount owed in connection with the Thin Wolf Bond.

Defendants do not dispute that plaintiffs incurred expenses associated with posting the Thin Wolf Bond, or that the Indemnity Agreement requires them to reimburse plaintiffs. Rather, defendants claim that between August 2001 and December 11, 2001, Barbara Kennedy, plaintiffs' in-house counsel, and Brent Walker orally agreed that a payment of $169,697.30 from Thomas Creek would settle all of defendants' accounts, including plaintiffs' claim for reimbursement for the Thin Wolf Bond. As proof of this alleged oral agreement, defendants rely on a facsimile transmission from Kennedy on March 7, 2002 confirming that a wire transfer payment was made to plaintiffs in the amount of $169,697.00 and that Thomas

Creek's account was credited accordingly.  Upon receipt of this facsimile, Brent Walker wrote a notation that this was a "final payment to F.F" and that the account was "closed."  Walker Decl., Ex. 4, p. 2.  Defendants maintain that plaintiffs did not seek further reimbursement with respect to the Thin Wolf timber sale until 2006, shortly before this lawsuit was filed.

Plaintiffs deny the existence of an oral settlement agreement between Kennedy and Walker.  While plaintiffs agree that they received a wire transfer in the amount of $169,697.00 and that a facsimile was sent by Barbara Kennedy on March 7, 2002, they deny that this payment satisfied defendants' obligations with respect to the Thin Wolf Bond.  Further, plaintiffs deny that they failed to seek reimbursement between 2002 and 2006.  Regardless, plaintiffs argue that even if an oral agreement existed between Kennedy and Walker, it could not, as a matter of law under the Indemnity Agreement, effectively release the defendants from their indemnity obligations to plaintiffs.

Paragraph 26 of the Indemnity Agreement explicitly provides that "[t]his Agreement and *the rights and remedies of the Surety hereunder may not be waived, changed, or modified orally*.  No written waiver, change, or modification shall be effective unless signed by an officer or other authorized representative of the Surety."  Declaration of Vida Hayes (Hayes Decl.), Ex. A, p. 5. (emphasis added).  An enumerated right of plaintiffs is the full

reimbursement of expenses incurred in connection with the Bonds:
"The Indemnitors shall indemnify the Surety against any and all
liability, costs, damages, attorneys fees and other expenses which
the Surety may sustain or incur by reason of or in connection with
the . . . Bonds . . . ." Hayes Decl., Ex. A, p. 1. Therefore, the
only agreed upon means to waive, change, or modify the right to
reimbursement possessed by plaintiffs is through a writing signed
by an officer or other authorized representative of plaintiffs; it
may not be waived or modified orally.

Defendants respond that ¶ 26 does not apply for two reasons.
First, defendants claim that under Oregon common law, a nonwaiver
provision like § 26 cannot bar an oral agreement between the
parties that modifies or waives the terms of the Indemnity
Agreement.  See Moore v. Mutual of Enumclaw Ins. Co., 317 Or. 235,
241, 855 P.2d 626 (1993) ("Under general contract law, a party to
a written contract can waive a provision of that contract by
conduct or by oral representation, despite the existence of a
nonwaiver clause."); see also Fisher v. Tiffin, 275 Or. 437, 441,
551 P.2d 1061 (1976) (a vendor's long-standing practice of
accepting late payments constituted waiver of time provisions of a
contract, despite the existence of a nonwaiver clause). Defendants
thus claim that plaintiffs modified their right to reimbursement
under the Indemnity Agreement when Kennedy orally assented to
settle the amounts owed on the Thin Wolf Bond, and that plaintiffs

8 - OPINION AND ORDER

cannot rely on the non-waiver clause of § 26.

However, defendants fail to present any credible evidence that the plaintiffs agreed to modify the terms of the Indemnity Agreement and waive their right to reimbursement for expenses incurred with respect to the Thin Wolf Bond. In his declaration, Walker simply states that he and Kennedy agreed that "$169,697.30 would settle all of our accounts." Walker Decl., p. 3. Walker does not state when, where, why, how, or under what circumstances the oral agreement with Kennedy was reached. Further, the documentary evidence defendants rely on does not support, and in fact contradicts, their assertion.

Defendants rely on Kennedy's facsimile transmission of an e-mail confirming that plaintiffs received a wire transfer in the amount of $169,697.00 and that Thomas Creek's account had been credited accordingly. However, as the cover sheet and e-mail indicate, this wire transfer was applied to plaintiffs' claim under the Thamnophis Bond. The cover sheet indicates that the facsimile is in regard to the "Thamnopsis [sic] wire transfer." Walker Decl., Ex. 4, p. 1. Likewise, the e-mail confirmation of the wire transfer includes the notation "Thamnophis" and the Thamnophis Bond claim number. Walker Decl. Ex. 2, p. 1 and Ex. 4, p. 2. Notably, plaintiffs received the wire transfer shortly after the parties agreed that the BLM would transfer to plaintiffs "its principal of $140,700 plus interest calculated . . . from August 19, 1998" after

receiving the funds from plaintiffs in order to satisfy defendants' obligations with respect to the Thamnophis Bond.  Walker Decl., Ex. 3, p. 3.

In sum, I find that defendants present no evidence suggesting that the wire transfer applied to their obligations under the Thin Wolf Bond.  Consequently, defendants' "conclusory [assertions] unaccompanied by any factual statements or evidence are insufficient to meet" their burden and defeat summary judgment. Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888 (1990) (object of Rule 56(e) "is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit"); Liberty Lobby, 477 U.S. at 249 (nonmovants must produce some "significant probative evidence" tending to support their denials); Collings v. Longview Fibre Co., 63 F.3d 828, 834 (9th Cir. 1995) (affidavit containing conclusory assertions concerning discriminatory intent without facts to substantiate the claim insufficient to avoid summary judgment); Hansen v. United States, 7 F.3d 137, 138 (9th Cir. 1993) (per curiam) ("When the non-moving party relies on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact.").

The cases cited by defendants do not persuade me otherwise. For example, the holding in Moore adds little to the analysis to this dispute; there, the Court held that Oregon statutory law

10 - OPINION AND ORDER

regarding insurance contracts supersedes the common law rule allowing waiver of a contractual provision through conduct or oral representation, despite the existence of a non-waiver clause. Moore, 317 Or. 235, 241, 855 P.2d 626. In Fisher (cited by Moore), the Court held that a creditor had established a pattern of accepting late payments that led the debtor to believe that the creditor would not insist on timely payment. Fisher, 275 Or. 437, 441, 551 P.2d 1061. Here, defendants present no evidence of a pattern or practice on the part of the plaintiffs that would lead defendants to believe that plaintiffs agreed to waive reimbursement for expenses incurred on the Thin Wolf Bond.

Defendants maintain that their reliance on the alleged oral settlement agreement is analogous to a statue of frauds claim, where partial performance is a possible defense. Accordingly, defendants maintain that the wire transfer of $169,697.00 is partial performance of the oral agreement and evidence of its existence. However, for the reasons set forth above, the wire transfer and any relevant communications do not support defendants' contention that plaintiffs' entered into a settlement agreement and waived their right to seek reimbursement under the Thin Wolf bonds.

Finally, defendants argue that Kennedy, as plaintiffs' in-house counsel for plaintiffs and authorized representative, agreed to modify the Indemnity Agreement in writing when she sent defendants a facsimile confirming the credit to their account.

11 - OPINION AND ORDER

This argument, however, is unpersuasive.  First, the facsimile does not contain the signature of Barbara Kennedy.  Rather it contains notations specifying an account and check number and stating, "Thamnophis" and "Pat - We need to create an NPR For this - Barbara."  Walker Decl., Ex. 4, p. 2.  Nothing on the facsimile reasonably suggests that it is a written waiver or modification of the terms of the Indemnity Agreement.  Likewise, as plaintiffs note, that the unilateral notations by Walker indicating - "Final Payment" to plaintiffs and "account closed" - do not signify that the parties reached a written agreement that waived or modified the terms of the Indemnity Agreement with respect to the Thin Wolf Bond. As explained above, the evidence suggests that the transfer settled plaintiffs' claim for reimbursement under the Thamnophis rather than the Thin Wolf Bond.

    In sum, defendants present no evidence that plaintiffs agreed to waive or modify their right to reimbursement of expenses, costs, and attorneys fees that plaintiffs incurred with respect to the Thin Wolf Bond.

CONCLUSION

    For the reasons explained above, defendants failed to establish a genuine issue of material fact that plaintiffs entered into a settlement agreement with respect to their claims under the Thin Wolf Bond.  Accordingly, plaintiffs' Motion for Summary Judgment (doc. 10) is GRANTED, and defendants' Cross Motion for

12 - OPINION AND ORDER

Summary Judgment (doc. 20) is DENIED. Before final judgment may issue, plaintiffs shall provide documentary evidence of the amount owed by defendants.

IT IS SO ORDERED.

     Dated this __4__ day of April, 2007.


                 _____/s/ Ann Aiken_____
                           Ann Aiken
                  United States District Judge__

13 - OPINION AND ORDER